IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA GEORGIA

| | |
|---|---|
| KIM EZEKIEL, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No.: 7:08-cv-127 (HL) |
| : | |
| TIFT COUNTY SCHOOL DISTRICT, : | |
| PATRICK ATWATER, INDIVIDUALLY, : | |
| AND IN HIS OFFICIAL CAPACITY : | |
| AS SUPERINTENDENT FOR THE : | |
| TIFT COUNTY SCHOOL DISTRICT, : | |

### ORDER

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. 16) (the "Motion"). For the following reasons, the Motion is granted.

### I. BACKGROUND

**A.     Employment and Promotion**

This is an employment discrimination case arising out of the Defendants' decision not to promote Plaintiff to the position of Director of Human Resources for the Tift County School District, but rather to hire a white male for the position. Plaintiff, at the time a 47 year old African-American female, alleges that this decision was motivated by discrimination based on her race, sex and age.

Prior to the events giving rise to this litigation, the Plaintiff had been employed in the Tift County School District (the "TCSD") for around twenty-five years. The Plaintiff worked for the TCSD as a classroom teacher from 1982 to 1993. In 1993 she was promoted to the position of Title I Parent Coordinator for the TCSD, a position she held until 1999. In 1999 the Plaintiff was named

principal of Len Lastinger Primary School, a position she has held since that time.

In 2007, with the retirement of the Assistant Superintendent of Schools for Personnel eminent, the TCSD changed the name of the position to Director of Human Resources ("DHR"), added new responsibilities to the position, began to advertise the soon-to-be-open position and began to solicit applications. Seven individuals, including the Plaintiff, applied for the DHR position. Of these seven individuals, TCSD selected five for interviews, including the Plaintiff.

At its regular monthly meeting, held in April 2007, Defendant Atwater, Superintendent for the TCSD, recommended that the Tift County Board of Education (the "board") hire for DHR Kevin Dobard, a fifty year old white male. The board voted to accept the recommendation.

**B.    Procedural History**

Upon learning of the board's decision, the Plaintiff filed a grievance with the TCSD, pursuant to board policy, in which she claimed that she had been discriminated against in the DHR selection. The board held a hearing and voted, finding that there was no discrimination in the hiring of Dobard rather than the Plaintiff.

In May 2007, the Plaintiff, with the assistance of counsel, filed two Charges of Discrimination (the "EEOC Complaints") against the board with the Equal Employment Opportunity Commission (the "EEOC").[1]  The EEOC

---

[1] The Plaintiff filed the EEOC Complaints on May 22 and May 25. A copy of each EEOC Complaint has been attached to the Plaintiff's complaint in this case as exhibits A and B. The two EEOC Complaints are virtually identical, except the May 22 complaint describes the discrimination as having taken place between April 2005 and May 11, 2005, whereas the May 25 complaint describes the discrimination as having occurred between Aprill 2005 and May 11, 2007.

2

Complaints describe how "on April 10, 2007, a recommendation was made to hire someone who was less qualified than [the Plaintiff.]"  The Plaintiff states that she was "discriminated against because of [her] race and sex[,]" and that Defendant Atwater had told her during the interview that in hiring for the DHR position "he was not concerned about qualifications, he wanted a team player. [Atwater] later stated that [Dobard] possessed the qualifications and abilities necessary to best serve as Director of Human Resources."  She alleges that she was discriminated against and retaliated against, and that "a less qualified male" was hired as DHR.  She stated that she "believe[s] that the Tift County School District has [a] pattern of discrimination against older black females who seek to move into or maintain upper level administrative positions."  In light of all this, she alleged that she was discriminated against based on race and sex, in violation of "Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991," and that she was retaliated against, in violation of "Title VII of the Civil Rights Act of 1991 [sic], as amended by the Civil Rights Act of 1964 [sic]."  She further alleges that she experienced economic, physical and emotional harm because of the discrimination and retaliation.

On July 29, 2008, the United States Department of Justice (the "DOJ") issued a letter to the Plaintiff informing her that 180 days had passed since the EEOC had assumed jurisdiction over the EEOC complaints, and that the DOJ had not filed suit.  The Plaintiff thus had 90 days from the receipt of the letter to file suit against the Defendants in the appropriate court.  The Plaintiff filed her complaint in this court on October 2, 2008.

Amongst the other allegations and prayers for relief in her complaint, the Plaintiff alleges that she was paid less than males in the TCSD because of her race and sex.  The Defendants filed the Motion, in which they argue that the disparate pay claims under Title VII are barred because the Plaintiff did not assert these claims in her EEOC Complaints, and thus failed to exhaust her administrative remedies.  The Plaintiff responded that the disparate pay claims were made under the Equal Pay Act of 1963, 29 U.S.C. § 206 *et seq.* ("EPA"), which does not require prior action by the EEOC.  Even if there were Title VII disparate pay claims, the Plaintiff continued, these claims are not barred because they are the kinds of claims which "grow out of" the claims made to the EEOC.

## II. DISCUSSION

### A.   Issues Presented

The parties raise the following issues:  first, whether the EPA part of the Plaintiff's complaint fails to state a claim.  Second, whether the Plaintiff's Title VII disparate pay claims are barred because of failure to exhaust administrative remedies.  This second issue turns on the resolution of a sub-issue, i.e., whether the Title VII disparate claims "grow out of" the actual EEOC claims such that they Plaintiff did not fail to exhaust her administrative remedies.

### B.   The Equal Pay Act Claims

The EPA prohibits discrimination on the basis of gender with regard to pay.  In other words, an employer is prevented from paying employees working in similar positions with similar responsibilities and duties differently based on

4

gender.  To establish a violation of the EPA at trial, the employee must show "that the employer paid employees of opposite genders different wages for equal work for jobs which require "equal skill, effort and responsibility, and which are performed under similar working conditions."  Stever v. General Electric Co., 318 F.3d 1066, 1077-78 (11th Cir. 2003).  This is the prima facie case a plaintiff must prove at trial—but pleading an EPA violation requires something less.

In federal court, a Plaintiff, in her complaint, must make "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Federal Rule of Civil Procedure 8(a)(2).  The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555, 127 S.Ct. at 1964-65.  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. at 556 n. 3, 127 S.Ct. at 1965 n. 3.  In this case, the Plaintiff failed to meet the minimum standard set by Rule 8(a)(2).  To demonstrate this, the Court will address each of the Plaintiff's EPA allegations, being overly deferential to the Plaintiff; that is, giving the Plaintiff the benefit of every doubt and accepting as true all factual allegations.

The following are all of the EPA allegations made by the Plaintiff in her complaint:[2]

- "Atwater participated [in] the discriminatory act of paying Plaintiff less than males for similar work." (Comp. ¶ 7)
- ". . . [Plaintiff] was paid less than white males for similar work because of her race, sex, and age. Plaintiff has more experience and education tha[n] the persons who were paid more than Plaintiff was paid." {Id. ¶ 9)
- "Plaintiff was paid less than males because she is a black female." (Id. ¶ 10)
- "During December 2004, Plaintiff was offered a position as a principal at another Tift County School, yet without notification the position was given to a younger, less experienced male. Plaintiff was paid less than these males [sic] even though she had more years of experience and higher levels of certification and degree." (Id. ¶ 11)
- "Plaintiff is still being paid less than white males and males in general." (Id. ¶ 15).
- "Defendants' actions in subjecting Plaintiff to sex discrimination, retaliation, and a hostile work environment constitute unlawful discrimination in violation of EPA. Defendants' actions in violating Plaintiff's rights under the EPA were willful." (Id. ¶ 31)
- Plaintiff asks the court to "award Plaintiff the Director of Human Resources Position . . . and the salary that she had been discriminatorily denied because she is a black female[.]" (Id. (e))

These allegations are insufficient for a variety of reasons. First, these are not factual allegations, but conclusory allegations that provide no factual bases to determine whether an EPA violation could have occurred. There are no allegations as to the time period during which this discrimination supposedly occurred, the salaries of the Plaintiff and her male colleagues (or at least the difference in salary), or whether the males to which she refers performed jobs requiring equal skill, effort or responsibility, or under similar working conditions. In fact, were it not for Plaintiff's invocation of the EPA in paragraph one of her

---

[2] The Plaintiff mentions the EPA in a general, all-inclusive allegation in ¶ 1. There is no substance to the allegation, so the Court will not address it.

6

complaint, it would not be possible to determine whether the Plaintiff was making an EPA claim as opposed to a Title VII complaint.

Second, in her allegations the Plaintiff states that she was paid less than three kinds of males: (1) "males" or "white males" as a general category; (2) "similarly situated males;" and (3) males with less experience or lower qualifications. The first two categories are of no concern in an EPA analysis. The category "males" provides no information that ties the Defendants' alleged behavior to any kind of discrimination sufficient to be actionable. Likewise, "similarly situated males" is language more appropriate for an equal protection claim than an EPA claim. Even accepting it as EPA language, though, the language in itself doesn't reveal much—how were the males similarly situated? By which criteria is this judged? Does this similar situation involve equal skill, effort and responsibility? Or work performed under similar working conditions? This language is so vague and conclusory as to be completely ineffective in setting out a short and plain statement of the claim showing that the Plaintiff is entitled to relief.

Finally, the Plaintiff's allegations regarding the qualifications and experience of her unnamed male colleagues who allegedly earn more than her are simply unhelpful and are, in fact, irrelevant for EPA analysis. "It is a basic and fundamental principle of Equal Pay Act claims that a plaintiff establishes a *prima facie* case by comparing the *jobs* held by female and male employees and showing that those jobs are substantially equal, not by comparing skills and qualifications of the individual employees holding those jobs." Jones v.

7

Westside-Urban Health Center, Inc., 760 F.Supp. 1575, 1579 (S.D. Ga. 1991) (emphasis in original). The Plaintiff's allegations regarding her qualifications and experience relative to a general male's are irrelevant.

The Plaintiff's EPA claims represent the very kind of conclusory allegations that are insufficient to satisfy the minimal requirements of Rule 8. For this reason, the Plaintiff has failed to state a claim regarding EPA violations. The Court grants Defendant's Motion for Judgment on the Pleadings (Doc. 16) with regard to Plaintiff's EPA claims.

## C. Title VII Disparate Pay Claims

The Plaintiff responds to the Defendants' argument regarding her Title VII disparate pay claims that she failed to exhaust administrative remedies by arguing that, while she did not specifically allege such a claim before the EEOC, such claims grew out of the claims in her EEOC Complaints. This Court is not convinced.

Before addressing the arguments about the Title VII disparate pay claims, this Court needs to consider the sufficiency of a motion for judgment on the pleadings as a vehicle for a challenge to the Plaintiff's complaint. Typically, in Rule 12 motions, the only materials a court may consider are the pleadings. See Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir. 1999). However, documents attached to a complaint are properly considered on a Rule 12 motion. Id. Even if the documents are not attached to the complaint, if a document is central to the complaint and the contents of it are not in dispute, then even documents appended to a motion to dismiss can be considered. Id. Here, the

8

EEOC Complaints are attached to the complaint and are proper matters for the court to consider as they are central to the complaint.

"No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." A.M. Alexander v. Fulton County, Georgia, 207 F.3d 1303, 1332 (11th Cir. 2000) *overruled on other grounds by* Manders v. Lee, 388 F.3d 1304 (11th Cir. 2000). The Eleventh Circuit has relaxed the pleading requirements to some extent, requiring something less than strict compliance with the rule.

> One such area in which we have recognized that strict compliance with Title VII is unnecessary is where the plaintiff has filed a charge with the EEOC, but in her judicial action the plaintiff raises issues related issues as to which no filing has been made. Thus, we have stated:
>
> As long as allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and "no material differences" between them exist, the court will entertain them. As we have noted . . ., the "scope" of the judicial complaint is limited to the "scope" of the EEOC investigation which can reasonably expected to grow out of the charge of discrimination.
>
> Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate.

Wu v. Thomas, 863 F2d 1543, 1547 (11th Cir. 1989).

"The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation." Id. Considering the allegations in the Plaintiff's EEOC Complaints, the contents of which are summarized above, it is difficult to see how a disparate pay claim could grow out of those allegations. The language of the EEOC Complaints strictly involves a failure to promote type claim. It speaks of

9

the recommendation to the board, the decision to hire Dobard rather than promote the Plaintiff, the relative qualifications of each with regard to the DHR position, the statements of Defendant Atwater as to what he was looking for in the successful DHR candidate, and the alleged policy of the TCSD to discriminate against older African-American females who seek to maintain upper-level administrative positions.  These complaints are specific in time, i.e., to the failure to promote the Plaintiff.  If there were a claim for disparate pay in the EEOC Complaints, there should have been more general allegations about discrimination over a period of time involving the disparate treatment of TCSD employees, rather than specific language regarding the hiring for the DHR position.  It is difficult to see in what way a disparate payment claim would grow out of allegations specific to the failure to promote claims.  To hold that a disparate pay claim grows out of failure to promote claims would be to determine that the simple act of raising one kind of discrimination claim with the EEOC would allow plaintiffs to file all manner of discrimination claims, no matter how remote they may be factually from the initial claim, in the district court.  This is not acceptable.

      The Plaintiff did not raise a disparate payment claim in her EEOC Complaint.  Moreover, there is no way to read a disparate pay claim as growing out of the EEOC Complaints.  For this reason, the Plaintiff failed to exhaust her administrative remedies in this case.  Thus, the Court grants the Defendants' Motion for Judgment on the Pleadings (Doc. 16) with regard to her Title VII disparate pay claims.

### III. CONCLUSION

The Plaintiff has failed to state a claim upon which relief can be granted regarding her EPA claim. Likewise, the Plaintiff failed to exhaust her administrative remedies with regard to her Title VII disparate pay claims. Therefore, the Court grants the Defendants' Motion for Judgment on the Pleadings on all of the Plaintiff's claims regarding unequal pay.

**SO ORDERED**, this the 1st day of February, 2010.

                                            **_s/ Hugh Lawson_**
                                            HUGH LAWSON, Senior Judge

jch