**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| **KIM EZEKIEL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **7:08-CV-127 (HL)** |
| **TIFT COUNTY SCHOOL DISTRICT,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## ORDER

Before the Court is the Defendants' motion for summary judgment (Doc. 24).

For the following reasons, the motion is granted.

## I.    NOTICE OF OBJECTIONS TO AFFIDAVIT

Before reaching the merits of the Defendants' summary judgment motion, the

Court addresses Plaintiff Kim Ezekiel's ("Ezekiel") objection (Doc. 43) to an affidavit

filed  as an exhibit to the Defendants' reply brief.  The affidavit is written by an

attorney for the Defendants, John Reinhardt ("Reinhardt").   Ezekiel claims

Reinhardt's affidavit improperly renders Reinhardt both an attorney and a witness

in the case.  She also asserts that the affidavit impermissibly advances new material

into the case.  Defendants claim that the affidavit is relevant because it responds to

statements made by Ezekiel in her response brief.   They state that they do not

intend to call Reinhardt as a witness.

The affidavit was filed in response to Ezekiel's challenge that Defendant Tift

County School District ("the School District") lacked a hiring and promotion policy or failed to follow the policies if any were in place. The affidavit from Reinhardt explains that he provided to Ezekiel's attorney copies of the School District's hiring and promotion policies that were in place during the time Ezekiel claimed she suffered from discrimination. Because the affidavit was filed in response to Ezekiel's challenge to the existence of any policies, the Court concludes that the affidavit is relevant and does not unfairly inject new material into the case.

Rule 56(e) requires that "affidavits" that support or oppose summary judgment motions "be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e). The affidavit from Attorney Reinhardt was based on Attorney Reinhardt's personal knowledge. Ezekiel does not contest whether Attorney Reinhardt has personal knowledge of the discovery materials he produced to Ezekiel's attorney.

Moreover, an affidavit is not improper on the basis that it was signed by an attorney of record. Reed v. Aetna Cas. and Sur. Co., Inc., 160 F.R.D. 572, 576 (N.D. Ind. 1995) (citing Friedel v. City of Madison, 832 F.2d 965, 970 (7th Cir. 1987)). Testimony that the School District had policies in place would be admissible evidence as would testimony that Ezekiel's attorney received copies of the policies.

Thus, the Court will consider the affidavit in deciding the motion for summary judgment because it complies with Rule 56 and contains relevant material. All facts will be viewed in the light most favorable to Ezekiel, the nonmoving party.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This is a case that arises out of the School District's and Defendant Superintendent Patrick Atwater's ("Atwater") decisions to not promote Ezekiel, an African American female,  to the position of Director of Human Resources for the School District.  Ezekiel has worked in the School District since 1982. (SOMF ¶ 6).[1] From 1982 to 1993 she was a classroom teacher.  (Id.).  In 1993 Ezekiel was promoted to the position of Title I Parent Involvement Coordinator.  (SOMF ¶ 7).  Her current position is principal of Len Lastinger Primary School, which she has held since 1999.  (Id.). She has never received a negative evaluation or a complaint about her job performance. (Ezekiel Aff.¶ 4).

Ezekiel holds a doctor in education degree, a masters degree in education administration and supervision, and a bachelors degree in early childhood education. (Ezekiel Aff. ¶ 2).

 In January 2007 the School District advertised a vacant position titled Director of Human Resources.  (Atwater Dep. Ex. 10).  The advertisement stated that the candidate "must hold, or be eligible for, a valid professional certificate in the field of Leadership . . . School level administrative experience required.  Experience as a school level principal strongly preferred."  (Id.).  Ezekiel applied for the position. (Ezekiel Aff.¶ 7).   Atwater asked Kevin Dobard ("Dobard"), the assistant principal

---

[1] "SOMF" refers to the Defendants' statement of material facts.  The cited paragraphs are those admitted by Ezekiel in her response to the statement of facts.

of Tift County High School, to apply for the position.  (Atwater Dep. at 86). Dobard is an African American male.

Scott Chestnutwood ("Chestnutwood") was responsible for the duties of the Human Resources Director and was asked to screen the applications for his replacement.  He remembers that he received approximately twelve applications for the position.   He selected approximately seven applicants to interview. (Chestnutwood Dep. at 28-29).  Ezekiel was one of the applicants selected as was Dobard.  (Id. at 29; Ezekiel Aff. ¶ 7).  Atwater interviewed the selected applicants. (Id. at 29; Atwater Dep. at 74).  Chestnutwood did not interview the applicants.  (Id.).

Ezekiel averred that she thought her interview was "a sham" because she was interviewed by Atwater alone and not by a panel of interviewers, which was contrary to the School District's practice.  (Ezekiel Aff. ¶ 8).   The School District's personnel hiring policy GBD-R states that "it shall be the responsibility of the recommending administrator to interview those candidates who apply . . . ."  (Pl. Res. Br. Ex. 10, Doc. 31-11).

After conducting interviews Atwater recommended to the School District's Board of Education that Dobard be hired as the Director of Human Resources. (Atwater Dep. at 5-6).   The Board of Education  accepted Atwater's recommendation.   (Id. at 25; Ex. 3, p. 4).

Dobard has a bachelors degree in education and a masters degree in education leadership.  (SOMF ¶ 15; Dobard Dep. at 86, 87-88).  He taught in the

New Orleans public school district for twelve years and served as a dean of students at a New Orleans school, a position that has similar duties to an assistant principal position. (Dobard Dep. at 86, 87). After he received his masters degree he served as an assistant principal at a senior high school in New Orleans. (Id. at 88). Dobard moved to South Georgia in 2005 after Hurricane Katrina struck New Orleans. He was hired by the School District to serve as the assistant principal of Tift County High School. (SOMF ¶ 18).

Atwater testified that Dobard was qualified for the Director of Human Resources position. (Atwater Dep. at 38). He met the requirements of the position since he had a masters degree in education leadership, which constituted a professional certificate in the field of leadership and he had school administrative experience. (Id.). Atwater chose Dobard for the position because Atwater received more unsolicited accolades about Dobard than any of the other principals in the School District combined. (Atwater Dep. Ex. 3, p. 109). He believed Dobard had made a positive impact upon the community. He thought Dobard was a very positive, upbeat, kind, and fair person. (Id.).

Atwater additionally believed Dobard was more qualified for the Director of Human Services position than Ezekiel even though Ezekiel served as a principal and Dobard did not and Ezekiel had a higher leadership level ranking than Dobard. (Atwater Dep. at 42). Atwater also believed that Ezekiel expressed less interest in the Director of Human Resources position than Dobard. He came to believe this

based on the flow of the conversation and Ezekiel's body language during the interview. (Atwar Dep. at 58).

Ezekiel believes that Atwater discouraged her from continuing with the interview because he asked her whether she would be interested in the Director of Human Resources position if she received a monetary incentive to remain a principal. (Ezekiel Aff. ¶ 7). Atwater testified that he asked Ezekiel that question because he wanted to know whether she was interested in the Director of Human Resources position solely because the position paid more. (Atwater Dep. at 59-60).

Ezekiel also was troubled by Atwater's interview question of whether she could get along with secretaries who "get in their moods." (Ezekiel Dep. at 60-61). Ezekiel took the question to mean that Atwater questioned whether she could get along with other people. (Id.).

After the Board of Education approved Dobard for the position, Atwater told Ezekiel that she was not selected for the Director of Human Resources position. Ezekiel later sent Atwater an e-mail asking why she was not hired. (Ezekiel Aff. ¶ 11). Atwater responded that he would come and talk to her, but he never did. (Id.).

Tammie Smith ("Smith"), a female, applied for the Director of Human Resources position. Atwater told her that "there's things I can say to a man that I can't say to a woman." (Smith Dep. at 11). Atwater testified that the Smith was upset and crying about not receiving the Director of Human Resources position when he made the statement. He explained that "[he] feel[s] more comfortable

sitting across from a man than a woman"because "it is easier dealing with people when they don't cry" and that "men typically don't seem to cry as much as females emotionally." (Atwater Dep. at 97-98).

Ezekiel filed a grievance with the School District's Board of Education claiming she was discriminated against on the basis of her sex and age when she was not promoted to the Director of Human Resources position. (SOMF ¶ 20). Ezekiel later abandoned her age discrimination claim when she discovered that Dobard was older than she was. (SOMF ¶ 23). The School Board held a hearing on Ezekiel's grievance. (Atwater Dep. Ex. 3). Following the hearing, it issued a written decision finding that Ezekiel was not discriminated against on the basis of her sex when she was not promoted to the Director of Human Resources position. (SOMF ¶ 24). Six of the seven members of the Board of Education found that Ezekiel did not suffer from discrimination; the member who decided that Ezekiel did suffer from discrimination was Ezekiel's aunt. (SOMF ¶ 26).

Ezekiel filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 22, 2007. (Compl. Ex. A). One week later she filed an amended charge of discrimination with the EEOC. (Compl. Ex. B). On July 29, 2008, the EEOC issued Ezekiel a right to sue notice. (Compl. Ex. C).

From the time she complained of discrimination in April-May 2007 Ezekiel claims she has been treated differently by her supervisors and the individuals with whom she works in the School District's central office. (Ezekiel Aff. ¶ 10). She

testified that after she filed her EEOC charge Atwater avoided her by not returning e-mails or phone calls. (Ezekiel Dep. at 136). However, by September 2007 his behavior toward her improved. (Id. at 138). Betty Newkirk ("Newkirk"), the assistant superintendent for instruction, made sarcastic remarks to her in principals' meetings. (Id. at 140). Newkirk also denied the Ezekiel the opportunity to implement programs such as a faculty book club, Saturday school, and use of Title I funds. (Id. at 142-46). Ezekiel thought Newkirk turned against her because Newkirk was Atwater's personal friend. (Id. at 149).

Since filing her grievance Ezekiel has not received any reduction in pay, except a reduction caused by the state's furlough program, or a change in the number of hours she must work. (Id. at 150). None of her duties and responsibilities as principal have changed, nor has she received a reduction in the benefits she receives. (Id. at 150).

On October 2, 2008, Ezekiel filed a complaint in this Court against the School District and Atwater, in his official and individual capacities. She alleges she was discriminated against on the basis of her race and sex as well as subject to a hostile work environment and retaliation. She claims violations of the Equal Protection Clause, Title VII of the Civil Rights Act of 1964,[2] the Equal Pay Act of 1963,[3] 42 U.S.C. § 1981, and state tort and contract law. Ezekiel asks for compensatory and

---

[2] The statute is codified at 42 U.S.C. 2000e *et seq*.

[3] The statute is codified at 29 U.S.C. 206 *et seq*.

punitive damages, attorneys fees, and injunctive and equitable relief.

The Court later granted the Defendants motion for judgment on the pleadings and dismissed Ezekiel's Equal Pay Act and Title VII claims based on disparate pay (Doc. 41). On December 2, 2009, the Defendants filed a motion for summary judgment seeking judgment as a matter of law on all of Ezekiel's remaining federal claims.

## III.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a defendant's motion for summary judgment, the court takes the facts in the light most favorable to the plaintiff. Stanley v. City of Dalton, 219 F.3d 1280, 1287 (11th Cir. 2000). The court may not, however, make credibility determinations or weigh the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

The initial burden lies on the movant to demonstrate that the nonmovant lacks evidence to support an essential element of its claim. Lowe v. Aldridge, 958 F.2d 1565, 1569 (11th Cir. 1992). The burden then shifts to the nonmovant, who must come forward with some evidence that would allow a jury to find in his favor, even if the parties dispute that evidence. Id. If the evidence that the nonmovant presents,

9

however, is "not significantly probative" or "merely colorable," then summary judgment may be granted. Liberty Lobby, 477 U.S. at  249.

**B.    Title VII, Equal Protection, and § 1981 Claims Analyzed Under Same Framework**

Ezekiel has brought discrimination claims under the Equal Protection Clause (via 42 U.S.C. § 1983), § 1981 (via § 1983), and Title VII.  These statutory and constitutional remedies are subject to the same standards of proof and use the same analytical framework.  Bryant v. Jones, 575 F.3d 1281, 1296 n. 20 (11th Cir. 2009).

The Court will accordingly evaluate each discrimination claim using one framework, regardless of whether the claim is brought under Title VII, § 1981, or the Equal Protection Clause.

**C.    Failure to Promote Race and Sex Discrimination Claims**

Ezekiel claims she was subjected to discrimination on the basis of her race and sex when she was not promoted to the position of Director of Human Resources.

Race or sex discrimination claims analyses proceed in one of two ways.  First, a plaintiff may present direct evidence of discrimination.  Second, a plaintiff may present circumstantial evidence of discrimination and shift the burden of producing contrary evidence to the defendant pursuant to the burden-shifting framework in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973).  Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1081 (11th

Cir. 2005).

Ezekiel argues there is direct evidence of discrimination present in the record and alternatively, that there is sufficient circumstantial evidence of discrimination. Each argument is addressed in turn.

### 1. Direct Evidence of Discrimination

Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir.2004) (citation omitted). "Evidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence." Taylor v. Runyon, 175 F.3d 861, 867 (11th Cir.1999) (citation omitted). Direct evidence does not include "stray remarks in the workplace, statements by nondecisionmakers, and statements by decisionmakers unrelated to the decisional process itself." E.E.O.C. v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990) (citation omitted).

Ezekiel points to the following statements made by Atwater as direct evidence of sex discrimination: (1) Atwater told Smith that he can say some things to a man that he cannot say to a woman; (2) Atwater stated that he was more comfortable sitting across the table from a man than a woman when the woman is crying; (3) Atwater said that men do not seem to cry as much as females; and (4) Atwater asked Ezekiel whether she could handle the moods of the secretaries. Assuming that Atwater made the statements, the statements do not rise to the level of direct

11

discrimination.

There is no evidence that Atwater's statements that he is more comfortable with a man than a crying woman, that women seem to cry more than men, and that he cannot say certain things to a woman were linked to the process of hiring the Director of Human Resources; therefore, they are not direct evidence of discrimination. Even if they were statements related to the decisional process, they do not prove, without inference, that Atwater decided not to recommend Ezekiel for the Director of Human Resources position because of her sex. The remaining comment about the secretaries' moods is related to whether Atwater thought Ezekiel could perform the Director of Human Resources position, but it merely suggests that Atwater may have declined to hire Ezekiel for the Director of Human Services position because of his general bias against women. It does not prove, without inference, that she was not promoted because of her sex.

Because Ezekiel has not proven her claims by way of direct evidence of discrimination, the Court will next consider whether there is circumstantial evidence of race and sex discrimination.

### 2. Circumstantial Evidence of Discrimination

The McDonnell Douglas framework provides that a plaintiff may prove his discrimination case through circumstantial evidence. Under this framework the plaintiff first presents a prima facie case of discrimination. Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir.2006). If the plaintiff presents a prima

facie case then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. Wilson, 376 F.3d at 1087. If the defendant produces a legitimate, nondiscriminatory reason for its actions, then the burden of production shifts back to the plaintiff to offer evidence that the defendant's articulated reason is a pretext for discrimination. Id.

To meet her burden of establishing a prima facie case of discriminatory failure to promote, a plaintiff must prove "(1) that [s]he is a member of a protected class; (2) that [s]he was qualified for and applied for the promotion; (3) that [s]he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." Combs v. Plantation Patterns, 106 F.3d 1519, 1538-39 n. 11 (11th Cir.1997).

Ezekiel alleges she was not promoted because of her race and sex. With regard to her sex claim, she has presented a prima facie case of sex discrimination: she is a female; she was qualified and applied for the Director of Human Resources position; she was not selected for the position; and Dobard, a male, was promoted to the position.

With regard to her race claim, however, she has not presented a prima facie case. Although Ezekiel is an African American and a member of a protected class, so is Dobard. Thus, she has not presented evidence on the fourth prong of a prima facie case. Ezekiel nevertheless argues that she can present a prima facie case even though Dobard is an African American male. She points to Howard v.

Roadway Exp., Inc., 726 F.2d 1259, 1535 (11th Cir. 1984), a case where race discrimination was found even though the plaintiff was replaced by a member of her protected class. Howard is distinguishable. In that case, the plaintiff was replaced by a member of her protected class after she filed a charge of discrimination. The replacement suggested a cover-up. In contrast, Dobard was hired before Ezekiel complained of discrimination.

Even if the Court were to assume that Ezekiel has presented a prima facie case of both race and sex discrimination, her claims must fail because the Defendants have presented a legitimate, nondiscriminatory explanation of their decision to hire Dobard, and Ezekiel has not presented evidence that the nondiscriminatory reason was a pretext for discrimination.

The Defendants assert that they did not hire Ezekiel because Dobard was the strongest candidate. Dobard received more accolades than other principals in the district, he had made a positive name for himself within the School District after working in the School District for one year and he was considered upbeat and fair. These reasons constitute legitimate, nondiscriminatory reasons for the decision to hire Dobard. "[A] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (citation omitted).

Since the Defendants have satisfied their burden of producing a nondiscriminatory reason, Ezekiel must show that the reason was a pretext for race or sex discrimination. To show pretext, the plaintiff must present evidence that shows "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions" in the defendant's explanations such "that a reasonable factfinder could find them unworthy of credence." <u>Jackson v. Ala. State Tenure Comm'n</u>, 405 F.3d 1276, 1289 (11th Cir.2005) (citation omitted). A plaintiff may also present evidence of pretext by showing that "intentional discrimination motivated the employer." <u>Wilson</u>, 376 F.3d at 1088.

Ezekiel argues that race and sex were the real reasons behind the decision to hire Dobard. She argues that the School District had a lack of objective hiring standards and promotion policies or that it did not follow its policies. The Defendants argue that the School District had objective hiring and promotion policies that were followed.

Policy CGC states that the School District is to actively recruit the best persons available for administrative positions in the school system. (Reinhardt Aff. Ex. C). Policy GBD states that the Board of Education seeks to employ those with the highest qualifications possible. (Pl. Res. Br. Ex. 10; Doc. 31-11). Ezekiel does not dispute that Dobard was qualified for the Director of Human Resources position. She does not argue that a doctorate degree or principalship experience was required; instead, she argues that the School District's policies were violated

because she was the best person available for the position since she held a doctorate degree and worked as principal.

The Defendants have presented evidence that Dobard had qualities that made him a better candidate than Ezekiel, namely his success at making a positive name for himself in the year as a newcomer to the School District and his receipt of accolades. "Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext ...." Springer, 509 F.3d at 1349 (citation omitted). Subjective criteria include "[t]raits such as common sense, good judgment, originality, ambition, loyalty, and tact often must be assessed primarily in a subjective fashion, yet they are essential to an individual's success in a supervisory or professional position." Id. (citations omitted.).

Ezekiel has presented no evidence that the Defendants' reliance on the subjective criteria and superior personal qualifications of Dobard was a mask for racial or sex discrimination.

Additionally, "[a] plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted." Id. (citations omitted). To show pretext based on qualifications, "a plaintiff must show that the disparities between the successful applicant's and his own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the

plaintiff." Id. (citation and quotation omitted). Because Dobard was qualified for the position and because Ezekiel's experience as a principal and her doctorate degree was not substantially higher than Dobard's experience and education, she was not a superior candidate such that no reasonable person could hire Dobard instead of Ezekiel.

In sum, the evidence in the record shows that the Defendants' decision to hire Dobard was a reasonable business decision. "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer." Id. at 1350 (citation omitted). Since she has failed to show the Defendants' failure to promote her was pretextual and nothing more than a reasonable business decision her race and sex discrimination claims must fail. Summary judgment is granted to Defendants on her discrimination claims for failing to promote her on the basis of her race and sex.

### D. Hostile Work Environment Claim

Under Title VII, a hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citation omitted). There is five part test a plaintiff must satisfy to establish a hostile work environment claim: (1) she belongs to a protected

17

group; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the plaintiff; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory, abusive working environment; and (5) the employer was responsible for such environment under either a theory of vicarious or direct liability. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir.2002).

The Defendants dispute whether Ezekiel was subjected to unwelcome harassment. Alternatively, they contend that even if there was harassment, it was not sufficiently severe or pervasive. Ezekiel asserts that the "record is covered with examples of how [Ezekiel] was subjected to a hostile work environment." Troubling to the Court is that she points to no evidence in the record to support her assertion. An unsupported assertion does not create a genuine issue of fact necessary to survive summary judgment. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.") (citation omitted). Ezekiel's failure to point to any evidence warrants granting summary judgment on her hostile work environment claim. Nevertheless, the Court has reviewed the record to determine whether there are facts creating genuine issues for trial.

The evidence that could possibly be construed as harassment based on

Ezekiel's sex are Atwater's statements about women.[4] The evidence that could be construed as harassment based on Ezekiel's filing of grievances is: (1) Atwater's failure to contact Ezekiel after she filed a grievance; (2) Newkirk's sarcastic remarks; and (3) Newkirk's failure to approve Ezekiel's proposed programs.

As for her hostile work environment claim based on sexual harassment, Atwater's statements about women must constitute sufficiently severe or pervasive harassment.  To meet this standard the behavior must result in both an environment "that a reasonable person would find hostile or abusive" and an environment that the victim "subjectively perceive[s] ... to be abusive." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002) (citation omitted).  To determine the objective component the Court considers, with other factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. (citation omitted).

Applying these factors, the Court finds that Atwater's conduct was not objectively severe or pervasive enough  to create a discriminatory and abusive working environment. Atwater's statements about women occurred sporadically.

---

[4] Atwater said to Smith there are some things he cannot say to a woman that he can say to a man.  He also said that "[he] feel[s] more comfortable sitting across from a man than a woman"because "it is easier dealing with people when they don't cry" and that "men typically don't seem to cry as much as females emotionally." He asked Ezekiel in her interview whether she could handle the moods of the secretaries.

They are too isolated to show that the conduct was severe enough to create a hostile work environment.  See McCann v. Tillman, 526 F.3d 1370, 1379  (11th Cir. 2008) (finding that sporadic discriminatory statements did not amount to severe or pervasive harassment).  The statements could reasonably be seen as offensive, but were not physically threatening or humiliating.  Notably, some of the statements were not made to Ezekiel, but rather made to Smith.  Ezekiel has not presented evidence of when she came to learn of Atwater's statements made to Smith.  Ezekiel cannot contend that the statements were harassing to her if she did not know the statements were made during the time she alleges she experienced a hostile work environment.  See Hudson v. Norfolk S. Ry. Co., 209 F.Supp.2d 1301, 1326 (N.D.Ga.2001) (explaining that a "[p]laintiff may support a claim of hostile work environment  by the use of harassing conduct she learned of through hearsay, so long as she was aware of the harassing incidents at the relevant time at which she alleges she experienced the hostile environment."). On these facts, Ezekiel's hostile work environment claim, to the extent it is based on  sexual harassment, fails.

The evidence supporting her hostile work environment claim based on her complaints of discrimination also is insufficient to survive summary judgment. Ezekiel admitted that Atwater's avoiding behavior began in April-May 2007 and ended by September 2007.  His conduct was temporary, it was not physically threatening or humiliating.  Ezekiel has not shown how his conduct interfered with her job performance.  As for Newkirk's allegedly sarcastic remarks, the record does

not state what the statements were. The mere allegation that Newkirk made sarcastic comments is insufficient to establish that the statements constituted harassment. There is also insufficient evidence to conclude that Newkirk's failure to approve Ezekiel's proposed programs was based upon Ezekiel's grievance filings. Even if Newkirk denied Ezekiel's program proposals because Ezekiel filed grievances, there is insufficient evidence to find that Newkirk's conduct was sufficiently severe or pervasive. In total, Newkirk denied Ezekiel the opportunity to implement approximately three programs. The denials were not frequent enough to create a pervasive environment of harassment. Newkirk's conduct also did not physically threaten Ezekiel and there is no evidence that Ezekiel's job performance was negatively affected.

Ezekiel has failed to create a genuine issue of fact on her claim that she was subject to a hostile work environment for filing grievances or because of her sex. Summary judgment must therefore be granted to the Defendants on Ezekiel's hostile work environment claim.

### E. Retaliation

Ezekiel contends that the Defendants retaliated against her because she filed grievances to the School Board and the EEOC and because she filed a complaint of discrimination in this Court. To establish a prima facie case of retaliation, "the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal

21

relation between the two events." <u>Meeks v. Computer Assocs. Int'l</u>, 15 F.3d 1013, 1021 (11th Cir.1994) (citations omitted). If a prima facie case is established, then the burden shifts to the employer to produce a legitimate nondiscriminatory reason for the adverse employment action. <u>Brown v. City of Opelika</u>, 211 Fed. App'x 862, 864 (11th Cir. 2006). Then the plaintiff must show that the proferred reason is a pretext for the employer's retaliatory action. <u>Id.</u>

The Defendants contend that Ezekiel has not presented evidence that she suffered an adverse employment action. Ezekiel responds that she suffered adverse employment actions because she suffered from retaliatory harassment. Her retaliation claim is supported by the same evidence as her hostile work environment claim: Atwater ignored her after she complained of discrimination; Ezekiel has not been allowed to implement programs; and Newkirk made comments to her in the workplace. She also mentions that she has not been awarded a twelve-month contract and central office personnel seemed upset when Ezekiel asked for documents to support her discrimination case.

An employment action is adverse if the conduct has a materially adverse effect on the plaintiff, which "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Crawford v. Carroll</u>, 529 F.3d 961, 973-74 (11th Cir. 2008) (citation omitted). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." <u>Burlington N. and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68, 126 S.

Ct. 2405, 165 L.Ed.2d 345 (2006); see also <u>Colapietro v. Dep't of Motor Vehicles</u>, 2010 WL 2596519, at *9 (D. Conn. June 24, 2010) (explaining that a supervisor's snubbing, use of offensive words, and shunning were annoyances rather than materially adverse actions).

The Eleventh Circuit has never explicitly held whether retaliatory harassment constitutes an adverse employment action, but other circuit courts have. <u>Noviello v. City of Boston</u>, 398 F.3d 76, 89 (1st Cir. 2005) ("The weight of authority supports the view that, under Title VII, the creation and perpetuation of a hostile work environment can comprise a retaliatory adverse employment action.") (citing multiple cases). Courts that recognize the claim for retaliatory harassment require the harassment be severe or pervasive. <u>Byrant v. Brownlee</u>, 265 F. Supp. 2d 52, 67 (D.D.C. 2003) (citing cases).

Following the directive of the courts that recognize retaliation harassment claims and for the same reasons that the Court found Ezekiel's hostile work environment claim failed, the Court must find that her retaliation claim fails. The conduct Ezekiel complains of does not rise to the level of pervasive or severe harassment.

Further, Atwater's conduct, the denial of Ezekiel's proposals, and the statements made by Newkirk and office personnel do not rise to the level of having a materially adverse effect on Ezekiel. Atwater's conduct was temporary. At most his avoidance of her constituted an annoyance. Newkirk's and office personnel

comments also are not materially adverse actions, but rather are annoyances.

Ezekiel has not shown how her employment was affected by Newkirk's conduct denying her requests to implement programs. If anything, students may have suffered from these denials, but Newkirk's conduct did not adversely effect Ezekiel, and even if it did, it was not sufficiently adverse to deter a reasonable person from complaining about discrimination.

Even assuming arguendo that Ezekiel has satisfied a prima facie case as to Newkirk's decision to deny Ezekiel's request to implement programs, she has not shown that Newkirk's decisions were motivated by a discriminatory reason. Since she has failed to show pretext, her retaliation claim based on Newkirk's decisions to deny program proposals fails.

As for Ezekiel's lack of a twelve-month contract, the Court will assume that the failure to award her a twelve-month contract was a materially adverse employment action. Ezekie, however, has presented no evidence that the failure to receive a twelve-month contract was causally related to her complaints of discrimination. Ezekiel actually testified that she should have been awarded a twelve-month contract because she was one of the higher paid employees within the School District. (Ezekiel Dep. at 119). The Defendants responded that Ezekiel does not have a twelve-month contract because her school size is smaller than other principals who receive twelve-month contracts. There is nothing showing that Ezekiel's lack of twelve-month contract was related to her complaints of

discrimination.

Ezekiel has not satisfied her summary judgment burden on her retaliation claim. Summary judgment must accordingly be granted to the Defendants.

### F.    Qualified Immunity

Atwater, a state actor, is entitled to qualified immunity on Ezekiel's equal protection and § 1981 claims, brought under § 1983. A state government official, like Atwater, is entitled to qualified immunity unless the plaintiff shows that the official committed a constitutional violation. <u>McCullough v. Antolini</u>, 559 F.3d 1201, 1205 (11th Cir. 2009).

As already discussed, Ezekiel has not presented sufficient evidence to demonstrate a genuine issue of material fact as to whether Atwater discriminated against her on the basis of her race or sex, and she has not shown that Atwater created a hostile work environment or retaliated against her. As a result, Ezekiel has not shown that his conduct violated any of Ezekiel's constitutional rights. He is accordingly entitled to qualified immunity.

### G.    Remaining State Law Claims

The Defendants have not moved for summary judgment on Ezekiel's state law claims of tortious interference with her employment contract (Count V), breach of contract (Count VI), intentional infliction of emotional distress (Count VII), and negligent retention of Atwater after he committed discrimination (Count VIII).

Because the Court grants the Defendants' motion for summary judgment with

regard to Ezekiel's federal claims, the only basis for jurisdiction over the state law claims is supplemental jurisdiction. The Court has discretion to decline to exercise supplemental jurisdiction over remaining state law claims. <u>Baggett v. First Nat'l Bank of Gainesville</u>, 117 F.3d 1342, 1352 (11th Cir.1997).

In this case, the Court sees no reason to decide the state law claims. Accordingly, the state law claims are dismissed.

## IV.    CONCLUSION

The Defendants' motion for summary judgment (Doc. 24) is granted. As the remaining state law claims are dismissed, the clerk's office is directed enter judgment in favor of the Defendants and close the case.

**SO ORDERED**, this the 27th day of August, 2010.

*s/  Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

lmc